### BATSON OIL CO. et al. v. JORDAN et al.
### No. 3073.

Court of Civil Appeals of Texas. Beaumont.
April 15, 1937.

Rehearing Denied April 21, 1937.

Jas. F. Parker, of Kountze, Walter F. Brown, of Houston, and Smith, Smith & Boyd, of Beaumont, for plaintiffs in error.

Thos. J. Baten, W. D. Gordon, and W. S. Parker, all of Beaumont, for defendants in error.

O'QUINN, Justice.

Defendants in error were plaintiffs below. We shall refer to them as appellees. Plaintiffs in error were defendants below. We shall refer to them as appellants.

Appellees Mrs. Myrtle Jordan, Ruby Collins, joined by her husband, C. H. Collins, Bessie Mae Daniels, joined by her husband, E. L. Daniels, Garnet Bradford, joined by her husband, Richard Bradford, and Ambrose Jordan, brought this suit against the Conzelmans and the Crarys (there being numerous Conzelman and Crary defendants), hereinafter for convenience referred to as "fee claimant defendants," in trespass to try title to two small parcels of land, parts of the Willis Donohoe league of land in Hardin county, Tex., one tract of about two acres, and the other of about one and one-half acres; and against the Batson Oil Company, Burt Exploration Company, Danciger Oil & Refineries, Inc., W. P. Luse Petroleum Company, W. P. Luse, and John A. Deering, which defendants will hereinafter be referred to as "lease claimant defendants," to reform or cancel certain oil and gas leases on the land. Plaintiffs claimed the land by virtue of the ten years' statute of limitation (Vernon's Ann.Civ.St. art. 5510).

The Conzelmans and Crarys (the fee claimant defendants) answered by plea in abatement (suggesting misjoinder of parties defendant and misjoinder of causes of action), plea of not guilty, and the three, five, and ten years' statutes of limitation (Vernon's Ann.Civ.St. arts. 5507, 5509, 5510), and special defenses against appellees' asserted title by limitation, which will be referred to and discussed later. The lease claimant defendants answered pleading their rights under leases, general denial, pleas of not guilty, pleas of innocent purchaser for value without notice, and estoppel against appellees as to reforming or canceling the leases.

The plea in abatement was overruled, and the case submitted to a jury upon special issues, all of which they answered in favor of appellees and upon which judgment was rendered for appellees against all of the defendants for the title and possession of the land, and reforming the lease from appellees Mrs. Myrtle Jordan et al. to Burt Exploration Company and W. P. Luse on March 20, 1933, as prayed, and canceling and annulling the lease from Garnet Bradford and her husband, Richard Bradford, to Burt Exploration Company and W. P. Luse on June 8, 1933, as prayed. Motion for a new trial was overruled and we have the case for review.

Appellants, fee claimant defendants (Conzelmans and Crarys) and lease claimant defendants, have filed separate briefs.

That of fee claimant defendants (Conzelmans and Crarys) contains 24 propositions based upon 84 assignments of error, while appellants' (lease claimant defendants') propositions are based upon 56 assignments. The briefs mentioned are of different arrangement, and to discuss the several assignments would result in an opinion of unnecessary and unreasonable length.

The assignments asserting error against the overruling of the pleas in abatement are overruled. All fee claimants were necessary as well as proper parties to the suit to determine ownership of the land. The lease claimants were asserting an interest in the land by reason of the leases held by them from fee claimants and plaintiffs, and if not necessary parties were proper parties, the validity and correctness of the leases being involved, it was proper that all such questions be settled in one suit. The combining of the two causes of action, one to determine the ownership of the land, and the other to the validity of the leases asserted against the land, did not prevent the defendants from making any defense they had to the suit to either reform or cancel the leases, nor did the joining of the actions prejudice either the fee claimants or lease claimants in the defense of their asserted rights in the property involved.

We overrule appellants' (fee claimant defendants' [Conzelmans and Crarys]) contention that the court erred in refusing their request for an instructed verdict. This contention was based upon the fact that the district court of Hardin county, Tex., on March 31, 1904, at the instance of B. D. Crary granted an injunction against George M. Jordan, who was the husband of plaintiff Mrs. Myrtle Jordan, and the father of the other plaintiffs, restraining him and other parties from trespassing upon the land involved, in a suit, by some of the persons under whom fee claimant defendants herein claim, and as plaintiffs' adverse possession in order to mature title under the ten years' statute, must be tacked to the adverse possession of George M. Jordan, and as said Jordan held possession of the premises in violation of said injunction, then his possession was in violation of law and therefore not adverse, and as their possession independent of the possession of said George M. Jordan was less than ten years, their motion for an instructed verdict should have been granted. In other words, that any possession of and claim to the land by

George M. Jordan after the date of said injunction, March 31, 1904, was illegal and without force in law, and could not be tacked to the·possession and use of the land by appellees to mature title under the ten years' statute of limitation. This contention is without merit. Ludtke v. Smith (Tex.Civ. App.) 186 S.W. 266, 267 (writ refused). In the cited case, the facts are on all fours with the facts in . the instant case, only stronger. There judgment against Ludtke for the land involved in a prior suit had been rendered and in said judgment he was perpetually enjoined from trespassing upon the land. Later he was again enjoined "from ever again trespassing upon the land." ·Still later (in the cited case) he was contesting the title to the same land, claiming it by the ten years' statute of limitation held and matured after the injunctions against him were issued. There, as here, it was urged against his limitation claim that his possession was not adverse because in violation of the injunctions against his trespassing. In disposing of this question, the court said : "The question then remaining to be determined is, Did the recovery of the land by Wilson from Ludtke in the various suits mentioned, and the issuance of the injunctions referred to, operate to prevent the running of limitations in favor of Ludtke upon his thereafter entering into the actual possession of the land notwithstanding the judgments and injunctions? We think we must answer this question in the negative. * * * We think, in view of this fact, that the mere existence of a judgment granting an injunction no more prevented the possession of the Ludtkes from being adverse than' did the judgment against him for the title and possession. And it makes no difference that in 1909 Ludtke was cited for contempt for disobeying the injunction, since no further action was taken in that matter, nor any order entered therein. Nor did the injunction have the effect of placing the land in custodia legis, as in the case of McAllen v. Crafts [Tex.Civ.App.] 139 S.W. 41, where the possession asserted as adverse was·taken and held under a writ of sequestration. We think, therefore, that the court should have submitted the defense of 10-year limitation pleaded by the defendants, and that the failure to do so was error which requires a reversal of its judgment." *Writ of error was refused.*

What we have said disposes of appellants' assignments of error against the court's·refusal· to strike the evidence relative to the possession·of and claim to the land by Douglas (George M. Jordan who was also known as Douglas Jordan) as tacked by ·plaintiffs to their possession and claim.

Various assignments are urged challenging the sufficiency of the evidence to support the jury's verdict, of ten years' adverse possession and claim to the land in controversy by appellees. These assignments are all overruled. We have carefully searched the record, and such finding has abundant support.

By their sixteenth proposition, appellants, fee claimant defendants, assert that the· court erred in submitting special issues 1 and 2 to the jury inquiring whether appellees had had peaceable and adverse possession of the two parcels of land in controversy for a period of ten years before the filing of the suit, because, they say, said charge permitted the jury to consider the possession of appellees and those under whom they claimed subsequent to January 30, 1931. This insistence is based upon the following facts : On said date, January 30, 1931, Jane Good Conzelman and others·filed suit in the United States District Court for the Eastern District of Texas against R. O. Jordan, in trespass to try title to certain lands including the two small parcels here in contest. This suit was prosecuted to final judgment on November 9, 1931, the said R. O. Jordan being awarded fifteen acres of the land described in plaintiffs' petition, and plaintiffs recovered from R. O. Jordan the remainder of the land in controversy in that suit, which included the two parcels here involved. In the instant suit it was. shown that at the time of the Conzelman-R. O. Jordan suit, said Jordan was the tenant of Mrs. Myrtle Jordan and holding and using tract No. 2 (known as the potato· patch) of the land as her tenant. It is not contended that he was in possession of or the· tenant of Mrs. Myrtle Jordan as to the other tract called the strip parcel.. It is urged by appellants, fee claimants, that even so· the judgment against R. O. Jordan, Mrs. Jordan, and the other appellees having notice of the suit, was effective against them and divested out of them whatever right or title, if any, they had to the land. To this contention appellees replied that they nor either of them were made party· to· the· suit, nor did they appear therein, nor did they take any part in same, that mere simple knowledge that such suit was pending and.. judgment therein rendered against R. O. Jordan, tenant of Mrs. Myrtle Jordan, oc-

cupying and using one of the two small tracts of land as such tenant, could not and did not have any force or effect upon their claim to the land.

We sustain appellees' contention. The fact that Conzelman sued R. O. Jordan for recovery of lands including the two parcels here in controversy, and obtained judgment against R. O. Jordan for all but fifteen acres of the land sued for, including the two parcels claimed by Mrs. Myrtle Jordan, she not being a party to the suit, and R. O. Jordan being her tenant of one of the two tracts, did not in any way foreclose Mrs. Jordan's title to the land here involved, nor prevent the possession of her tenant, R. O. Jordan, from being her possession. The Conzelman suit in no manner affected her rights, under the facts, in the instant suit. Stout v. Taul, 71 Tex. 438, 9 S.W. 329; Hart v. Meredith, 27 Tex.Civ.App. 271, 65 S.W. 507 (writ refused).

We also overrule assignments 12 and 13 that the charge of the court submitting special issues 1 and 2 were on the weight of the evidence and assumed the location of the fences mentioned. The charge was not subject to these objections.

The assignments asserting error in the court's charge in defining "adverse possession" are overruled. The objection to the charge was that it did not instruct the jury that for possession to be adverse it must have been *"hostile to the claim of the real owner."* The definition of "adverse possession" was in the actual language of the statute, article 5515, R.S.1925. This was sufficient.

All assignments of appellants (fee claimants) have been considered, none of them show error, and all are overruled.

### Matters Presented by Lease Claimant Appellants.

Lease claimants Batson Oil Company, Burt Exploration Company, et al. asserted an interest in the land involved under two claims: First, through an oil and gas lease executed by the Conzelmans and the Crarys (fee claimants) on February 24, 1933; and, second, under leases from appellees (the Jordans) executed March 20, 1933, and April 15, 1933, and June 8, 1933, the March 20, 1933, lease containing what is generally known as the "shotgun clause." The first lease (from the Jordans) dated March 20, 1933, specifically described the land leased from the Jordans as the "south fifteen acres of the J. D. Jordan 30 acre tract, in the B. L. Jordan south homestead of about 112-½ acres." The Conzelmans and Crarys were asserting title, among other tracts, to 40.47 acres in the Donohoe league. The land here involved (the two small parcels) was a part of said 40.47 acres, *not a part of the 15 acres specifically described in the lease.* As stated, the lease claimant defendants (appellants here), in addition to the claim of title they held by virtue of their lease from the Conzelmans and the Crarys, claimed title to the leasehold rights in the two tracts involved by virtue of the "shotgun clause" in their lease from appellees Jordan which reads: "And it being the purpose of this instrument to lease all the land I own or claim in the Willis Donohoe League in Hardin County, Texas, whether described or not."

Appellees (Jordans) sought to reform this lease by striking out the "shotgun clause" on the ground that it was placed in the lease by mutual mistake of the parties to the lease contract. This issue was submitted to the jury as special issue No. 5, which reads:

"Question 5: Do you find that the clause in the Myrtle Jordan lease following the particular description of the land, and reading as follows: 'and it being the purpose of this instrument to lease all the land that I own or claim in the Willis Donohoe League, whether described or not,' was put in said lease as a result of mutual mistake without the parties intending to embrace any more land than said 15 acres? By mutual mistake is meant a mistake on the part of each party to said lease.

"Let your answer be 'yes it was a mutual mistake' or 'no, it was not a mutual mistake,' as you find the fact to be."

The jury answered: "Yes, it was a mutual mistake."

Appellants' (lease claimants') assignment that the issue was not raised by the evidence is overruled. The record reflects that the lease was obtained by appellant Burt of the Burt Exploration Company. He prepared the lease himself, and engaged Judge Leak Bevil, county judge of Hardin county, to go to the lessees and get them to execute the lease. All the testimony of the Jordans show that their attention was not called to that clause in the lease, and that if they had known of its presence in the lease they would not have executed it. Judge Bevil testified

that he did not read the lease to them nor call their attention to said clause. Burt testified that he put the clause in the lease on purpose, but admitted that he did not know that the Jordans owned or had any other land in the Donohoe league than the 15 acres leased. The lease described fifteen acres, and was executed for the consideration of $75 an acre cash and an additional $25 an acre in oil if successfully developed. It appears that Burt's agent, in procuring the signing of the lease, Judge Bevil, who also took the acknowledgment to the lease, merely informed lessees that they were leasing the 15 acres described for the $75 per acre and the oil consideration if successful—nothing was said about the lease covering any other land the Jordans owned or claimed in the Donohoe league. The Jordans owned another tract of about 30 acres in the north part of the league. Burt said he had no knowledge of this tract, and repeatedly said in testifying that he did not claim that it was included or intended to be included in the lease. It was shown that *after the lease in question* was executed by the Jordans, appellants, lease claimants, *endeavored to get from the Jordans a lease on the two tracts in controversy,* but that negotiations for same failed. Judge Bevil testified that he acted for Burt and that he did not know of the "shotgun clause" in the lease, and that if he had known of it *"I sure would have told them of it."* Further, the lease contained this provision: "As a further consideration herein lessees agree that if and when oil will have been produced from said land, said lessee will run in to the connecting pipeline oil of the market value of $375.00 to the credit and to be paid to lessors herein."

■ It seems to us that this provision of the lease shows positively that the parties intended to and were dealing *only* with the 15 acres described in the lease because the amount to be paid out of oil from the *entire land leased* fixed at $25 per acre amounted to *exactly* the named sum of $375. The record discloses that the Jordans, lessors, were mostly of very limited education, and that Mrs. Jordan could scarcely read and had no knowledge of or experience in matters like that involved. It also appears that she knew and placed much confidence in Judge Bevil, and that doubtless accounts for his being requested by Burt to obtain the execution of the lease. It does not appear that Judge Bevil was in any way interested in the Jordans

executing the lease other than he was requested by Burt to do so. There is much more in the record that we think points to the fact that the "shotgun clause" was in the lease because it was to be found in all regular forms, and not because by its inclusion in the instant instrument it was intended to cover doubtful descriptions of any tract of land, but, to the contrary, the 15 acres described was of certain location, no doubt as to its exact bounds, and was the only land contemplated by the parties in their negotiations for the lease and its execution. In any event, the above-stated facts certainly raised the issue of mutual mistake, and the court did not err in submitting same to the jury. All assignments directed against the submission of said issue, and criticizing the form and substance of same (some 16 of them), are overruled. Likewise, all assignments challenging the sufficiency of the evidence to support the jury's finding on said issue are overruled. It would serve no useful purpose, but would unduly lengthen this opinion, to quote by question and answer the record which we think shows the raising of the issue and supports the finding of the jury.

■ Garnet Jordan, at the time of the execution of the lease by the Jordans on March 20, 1933, was a minor, and S. E. Jordan, an uncle, was her guardian. On April 15, 1933, her said guardian, S. E. Jordan, acting as such, leased to Burt Exploration Company her undivided interest in the south 15 acres of the J. D. Jordan 30 acres (the 15-acre tract herein in controversy) describing same by metes and bounds as same was described in the Myrtle Jordan lease, and followed by the same "shotgun" clause as the Jordan lease. However, the "shotgun" clause was eliminated by ink lines drawn through same. Later Garnet Jordan married Richard Bradford. Soon afterwards, on June 8, 1933, appellant, lease claimant, Danciger Oil & Refining Company sent a man by the name of Jones to the home of Bradford and wife and requested that she and her husband execute a ratification lease in lieu of the first one, saying that as she had married it was necessary that she and her husband ratify the old lease by executing a new one, and told them that the new lease was in terms identical with the first and its only necessity was to ratify the old one. Neither of them knowing anything of the first lease only that it had been executed by her guardian and covered

her undivided interest in the 15 acres of the Jordan lease (she was a daughter of Mrs. Myrtle Jordan), and without receiving any consideration whatever for so doing, they executed the new lease to take the place of and to ratify the old one. This new lease of June 8, 1933, did have the "shotgun" clause which had been erased from the first one. This was not made known to either of them, but they believed the statement made to them by Jones, the agent of appellants, that it was necessary for Mrs. Bradford to ratify the old lease executed by her guardian, and that the new lease presented to them for execution was the same in all particulars as the old one, and relying on the truthfulness of said representations, they signed and acknowledged the new lease. As a reason for not paying anything for this last lease, Jones told Mrs. Bradford that she had already received her money through her guardian in payment of the first lease in the sum of $150. These facts are not disputed.

Cancellation of this lease was prayed on the ground of the fraudulent and false statements to them by said agent of appellants. This question was submitted to the jury by special issues Nos. 6 and 7 as follows:

"Question No. 6. Do you find that the lease signed by Mr. and Mrs. Bradford on June 8, 1933, was procured from them under the representation that it was simply a ratification of the previous lease made by Mrs. Bradford's guardian?" The jury answered: "Yes."

"Question No. 7. If you have answered the foregoing question 'yes' did the said Bradfords rely on such representations as being true"? The jury answered: "Yes."

Assignments are leveled against these findings of the jury as being without support in the evidence and against the overwhelming weight and preponderance of the evidence. They are all overruled. As we view the facts reflected by the record, there is no dispute as to the above-stated facts. The verdict has ample support.

On these findings the court entered judgment canceling the lease of June 8, 1933, leaving the lease of said Garnet Jordan (Mrs. Bradford) by her guardian effective.

Many other questions than those discussed are presented by appellants; lease claimants; but as we think the matters discussed dispose of the material questions involved, they will not be discussed, but are all overruled.

From what we have said, it follows that the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.